**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **HEADWATER RESEARCH LLC,**<br><br>**v.**<br><br>**WALMART INC.** | **Case No. 2:25-cv-00961-JRG-RSP**<br>**(Lead Case)** |

**<u>DEFENDANT WALMART, INC.'S MOTION TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 1

    A.     Headwater's Case Against Google Involving Two of the Asserted Patents Here Was Transferred to NDCA and Is Pending in That District ........................ 1

    B.     Headwater Is a Non-Practicing Entity That Lacks a Significant Connection to EDTX but Has a Longstanding Connection to NDCA ...................................... 2

    C.     Walmart Has Relevant Evidence and Witnesses in NDCA but Not in EDTX ...................................................................................................................... 3

    D.     Headwater's Infringement Allegations Are Directed Entirely to FCM, Which Was Designed and Is Maintained by Google in NDCA ............................ 3

    E.     Many Additional Third-Party Witnesses Are in NDCA ...................................... 5

        1.     Former Headwater Employees, ItsOn Employees and Patent Prosecutors Who May Be Called As Witnesses ........................................ 5

        2.     Other Third Parties Who May Be Called As Witnesses ............................ 6

III.   LEGAL STANDARD ........................................................................................... 7

IV.    ARGUMENT ........................................................................................................ 8

    A.     This Suit Could Have Been Filed in NDCA ......................................................... 8

    B.     The Private Interest Factors ................................................................................... 8

        1.     The Relative Ease of Access to Sources of Proof Favors Transfer ........... 8

        2.     The Availability of Compulsory Process Favors Transfer ...................... 10

        3.     The Cost of Attendance for Willing Witnesses Favors Transfer ............. 11

        4.     The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Are Neutral ............................................. 12

    C.     The Public Interest Factors ................................................................................. 13

        1.     The Local Interest in Having Localized Interests Decided at Home Favors Transfer ...................................................................................... 13

        2.     The Remaining Factors Are Neutral ....................................................... 14

V.     CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)......................................................................................13

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. 2013)............................................................................10

*In re Apple*,
979 F.3d 1332 (Fed. Cir. 2020)........................................................................................9

*In re Apple, Inc.*,
581 F. App'x. 886 (Fed. Cir. 2014) ...............................................................................11

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ............................................................................................8

*Cortex MCP, Inc. v. Visa, Inc.*,
2023 WL 11990868 (W.D. Tex. Nov. 3, 2023)...............................................................14

*In re DISH Network L.L.C.*,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)..................................................................10

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................................11

*In re Google LLC*,
2021 WL 4427899 (Fed. Cir. 2021)...............................................................................14

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ......................................................................................14

*In re HP Inc.*,
2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ...............................................................10

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*,
321 F.2d 53 (5th Cir. 1963) .............................................................................................7

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ..................................................................................9, 15

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ..........................................................................................14

ii

*Valtrus Innovations Ltd. v. Google LLC*,
  2025 WL 2076627 (N.D. Tex. July 22, 2025) .........................................................................14

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...................................................................................................7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .............................................................................8, 11, 12, 13

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................................1, 7, 11

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) .........................................................................................................10

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Headwater Infringement Contentions Against Walmart |
| 2 | Google LinkedIn |
| 3 | Google - Our Story webpage at https://about.google/company-info/our-story/ |
| 4 | Google - Locations webpage at https://www.google.com/about/careers/applications/locations |
| 5 | April 23, 2025 Trial Transcript (Dkt. 472) from *Headwater Research LLC v. Samsung Electronics America, Inc.*, *et al.*, No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 6 | February 20, 2025 Hearing Transcript (Dkt. 338) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 7 | Samsung Electronics Co., Ltd and Samsung Electronics America, Inc.'s First Amended Answer and Defenses to Plaintiff Headwater Research LLC's Complaint (Dkt. 58) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00641-JRG-RSP (excerpts) |
| 8 | Flight Options from San Francisco, CA to: (i) Dallas, TX and (ii) Shreveport, LA |
| 9 | Headwater Partners I LLC Application for Registration |
| 10 | ItsOn Inc. Statement and Designation |
| 11 | Headwater Management LLC Application to Register |
| 12 | Deposition Transcript of Krista Jacobsen (Dkt. 1-5) from *Jacobsen v. Samsung Elecs. Co.*, No. 2:25-mc-0004-JRG-RSP (excerpts) |
| 13 | U.S. Patent No. 8,839,388 |
| 14 | Charles Giancarlo LinkedIn |
| 15 | Deposition Transcript of David Wise (Dkt. 320-2) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 16 | Cory Modlin LinkedIn |
| 17 | Defendants' Response in Opposition to Plaintiff's Omnibus Motions In Limine (Dkt. 286) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.,* No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 18 | Defendants' Opposition to Krista Jacobsen's Motion to Quash (Dkt. 8) from *Jacobsen v. Samsung Elecs. Co.*, No. 2:25-mc-0004-JRG-RSP (excerpts) |
| 19 | Roger Sippl LinkedIn |
| 20 | James Fitzgerald LinkedIn |
| 21 | April 24, 2025 Trial Transcript (Dkt. 473) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 22 | Defendants' Motion for Summary Judgment re Notice, Marking, and Pre-Suit Damages (Dkt. 273) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP (excerpts) |
| 23 | Jim Lavine LinkedIn |
| 24 | January 14, 2025 Trial Transcript (Dkt. 504) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP (excerpts) |
| 25 | Ali Raissinia LinkedIn |
| 26 | Provisional Patent Application No. 61/207739 |
| 27 | Van Pelt, Yi & James LLP Our Team webpage at https://ip-patent.com/team/ |

| # | Description |
|---|---|
| 28 | Memorandum Order (Dkt. 401) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP |
| 29 | Itson, LLC Articles of Incorporation |
| 30 | Sherwood Partners, Inc. Articles of Incorporation |
| 31 | InterDigital Contact Us webpage at https://www.interdigital.com/contact |
| 32 | Memorandum Order (Dkt. 255) from *Headwater Research LLC v. AT&T Inc., et al.*, No. 2:23-cv-00397-JRG-RSP |
| 33 | Qualcomm Contacts webpage at https://investor.qualcomm.com/about/contacts/default.aspx |
| 34 | Defendants' Motion to Dismiss for Lack of Standing (Dkt. 274) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP (excerpts) |
| 35 | January 13, 2025 Trial Transcript (Dkt. 502) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP (excerpts) |
| 36 | January 15, 2025 Trial Transcript (Dkt. 505) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:22-cv-00422-JRG-RSP (excerpts) |
| 37 | April 3, 2025 Hearing Transcript (Dkt. 101) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00641-JRG-RSP (excerpts) |
| 38 | Motion to Quash Subpoena (Dkt. 1) from *Jacobsen v. Samsung Elecs. Co.*, No. 2:25-mc-0004-JRG-RSP |
| 39 | Flight Options from Bengaluru, India to: (i) San Francisco, CA; (ii) Dallas, TX; and (iii) Shreveport, LA |
| 40 | Flight Options from Reno, NV to: (i) San Francisco, CA; (ii) Dallas, TX; and (iii) Shreveport, LA |
| 41 | First Amended Complaint (Dkt. 28) from *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00231-DC-DTG (excerpts) |
| 42 | April 22, 2025 Trial Transcript (Dkt. 471) from *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, No. 2:23-cv-00103-JRG-RSP (excerpts) |
| 43 | Building Push Applications for Android presentation |
| 44 | Google LLC's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a) (Dkt. 38, public version) from *Headwater Research LLC v. Google LLC*, No. 7:25-cv-00231-DC-DTG |
| 45 | Time to Trial in EDTX, DocketNavigator (as of March 26, 2026) |
| 46 | Time to Trial in NDCA, DocketNavigator (as of March 26, 2026) |
| 47 | Driving Distances and Times From Various Locations to the U.S. District Court for the Northern District of California – San Francisco Courthouse |
| 48 | Driving Distances and Times From Various Locations to the U.S. District Court for the Eastern District of Texas – Marshall Courthouse |
| 49 | Driving Distance and Time from Incline Village, NV to Reno-Tahoe International Airport |
| 50 | Driving Distances and Times from Various Locations to San Francisco International Airport |

## I.    INTRODUCTION

Defendant Walmart, Inc. ("Walmart") moves to transfer this case brought by Plaintiff Headwater Research LLC ("Headwater") to the Northern District of California ("NDCA"), San Francisco Division under 28 U.S.C. § 1404(a).  The case centers on allegations of patent infringement related to third party Google LLC's ("Google") Firebase Cloud Messaging System ("FCM"), which Google designed and maintains in NDCA.  Transfer here is appropriate for several reasons.  First, one of Headwater's co-pending lawsuits against Google ("Google I"), involving two of the same patents, was recently transferred to NDCA from the Western District of Texas ("WDTX").  Second, Headwater has deep roots in NDCA and lacks any significant connection to the Eastern District of Texas ("EDTX").  Third, several Walmart witnesses and relevant evidence is located in NDCA; no Walmart witness or evidence is located here.  Fourth, Google witnesses and evidence that will be crucial to this case are in NDCA, and none are here.  Fifth, additional third-party witnesses are concentrated in NDCA; none are here.  Considering these facts against the eight well-settled transfer factors makes clear that transfer is warranted.[1]

## II.    FACTUAL BACKGROUND

### A.    Headwater's Case Against Google Involving Two of the Asserted Patents Here Was Transferred to NDCA and Is Pending in That District

Headwater sued Google for patent infringement across two cases in WDTX, asserting U.S. Pat. Nos. 9,198,117, 9,615,192, and 10,321,320, (the "Asserted Patents") which Headwater also asserts against Walmart here.  *See Headwater Research LLC v. Google LLC*, Case Nos. 25-cv-231, 25-cv-367 (W.D. Tex. 2025).  Google moved to transfer the cases involving the Asserted

---

[1] Should the Court grant Walmart's pending Motion to Stay during the pendency of the Google cases (Dkt. 68), Walmart agrees to withdraw this Motion because a transfer will not be necessary, since Walmart has agreed to be bound by the outcome of the Google cases (*id*. at 8–9).

Patents to NDCA, arguing that "[f]ive out of the eight factors favor transfer—including the most important, the cost of attendance for willing witnesses—as the majority of witnesses are located in or near NDCA" and that "not a single factor weighs in favor of refusing transfer" because WDTX "is thousands of miles away from the vast majority of relevant witnesses, and is wholly unconnected to the underlying dispute." Ex. 44 at 20. On February 18, 2026, the WDTX court granted Google's motion as to Google I, and transferred the case to NDCA. *See* Case No. 25-cv-231, Dkt. 83 (text order). The transfer motion in the second case ("Google II") is still pending. Many of the same facts and circumstances underlying Google's successful motion are also present here, as discussed below.

**B.      Headwater Is a Non-Practicing Entity That Lacks a Significant Connection to EDTX but Has a Longstanding Connection to NDCA**

Headwater is a "non-practicing entity." It does not make any products. Its entire business is acquiring patents and filing lawsuits against legitimate going concerns like Walmart and Target, in the hopes that these companies would rather pay licensing or settlement fees than engage in costly litigation in far-flung places like Marshall, Texas. Together with its related entity, Headwater Partners II, Headwater has filed more than 75 patent infringement lawsuits within the last three-and-a-half years. Bapna Decl. ¶¶ 2–77.

Headwater purports to maintain an office in Tyler, Texas, but Dr. Greg Raleigh, Headwater's founder and the sole inventor named on the Asserted Patents (Dkt. 19 ¶¶ 2, 10), resides in, and operates Headwater by himself from, Nevada (*see* Ex. 35 at 231:21–232:4; Ex. 36 at 843:1–844:7). Headwater Innovations LLC, which has a California mailing address, purportedly owns 100% of Plaintiff Headwater Research. *See* Ex. 7 at 16–17. Headwater Innovations LLC's "Managing Member," Jonathan Kagan, resides in Los Angeles, California. *See* Ex. 37 at 70:3–8.

2

Headwater has roots in NDCA dating back almost 20 years. As Headwater's First Amended Complaint ("FAC") explains, in 2008, Dr. Raleigh incorporated Headwater (Headwater Partners I LLC, the predecessor to the Plaintiff here). Dkt. 19 ¶ 10; Ex. 6 at 12:18–13:3; Ex. 9. Headwater Partners I LLC was headquartered in NDCA. Ex. 9. That same year, Dr. Raleigh founded Headwater's sister company, ItsOn Inc. ("ItsOn"), to commercialize "Headwater's patented technology." Ex. 6 at 25:18–23. ItsOn was also headquartered in NDCA. Ex. 10. He later merged Headwater Partners I LLC with Headwater Management LLC, another entity he founded that was headquartered in NDCA, to form the Plaintiff in 2011. Ex. 6 at 12:18-13:3; Ex. 11; Dkt. 19 ¶ 16.

**C.      Walmart Has Relevant Evidence and Witnesses in NDCA but Not in EDTX**

Walmart is a Delaware corporation with its corporate headquarters in Arkansas and other offices in Sunnyvale, California, which is located in NDCA. James Decl. ¶ 2. Walmart's U.S-based employees who work on the accused products (Walmart mobile apps that send push messages using FCM) and are likely witnesses in this case work out of the Sunnyvale offices and live in or near NDCA. James Decl. ¶¶ 6–8. These employees create documents concerning the accused products in NDCA. *Id*. ¶¶ 7, 8. Walmart has not identified, and is not aware of, any potential witnesses in this District or anywhere in Texas. *Id*. ¶ 11. No servers that might contain documents related to the accused products are located in this District. *Id*.

**D.      Headwater's Infringement Allegations Are Directed Entirely to FCM, Which Was Designed and Is Maintained by Google in NDCA**

Walmart is the named Defendant only because it uses Google's FCM platform through its apps, like other retailers who were sued. Non-practicing entities prefer to sue many retailers to extract relatively small settlements from each of them; the strategy is a volume play. Headwater's pleading confirms the criticality of Google here: the first paragraph of the FAC alleges that "the

3

Accused Instrumentalities include Defendant's mobile applications and their use of push messaging technology and a push messaging service, such as [Google's] Firebase Cloud Messaging, for push messaging in the United States . . . ."  Dkt. 19, p. 1; *see also id*. at ¶¶ 22, 38, 56, 74.  Headwater's infringement contentions reinforce the point: they appear to be copied from Google I and II – they cite no Walmart-specific evidence, and *they identify "Google's Firebase Cloud Messaging (FCM)" as the Accused Instrumentality throughout.  See* Ex. 1, *passim*.  This is no surprise.  Headwater told the Court it was asserting the Asserted Patents against Walmart based on Walmart's "use of Firebase Cloud Messaging."  Dkt. 74 at 2–3.  In Google I and II, Headwater likewise told the Court that "Google provides the Android operating system and back-end services (like FCM) . . . that infringe Headwater's patents."  Dkt. 59-2 ¶ 19; *Google II*, Dkt. 1 ¶¶ 11–13, 28, 41.

Walmart had no involvement in designing or developing FCM.  Dkt. 68 at 8, 9; *see also* James Decl. ¶ 5.  Google supplies FCM to Walmart, and Walmart only uses FCM in furtherance of its business operations.  Dkt. 68 at 6.  Google has acknowledged as much in its own granted motion to transfer to NDCA, stating that it "created the FCM technology . . . in NDCA in early 2007 and, for eighteen years, has developed and managed FCM primarily from there."  Ex. 44 at 1 (emphasis added).

Google's witnesses and documents that will likely be key to Walmart's defense are concentrated in NDCA.  Google employs more than 52,000 people in California generally, dwarfing its Texas presence.  Ex. 2.  Google's headquarters are in NDCA in Mountain View, CA, and its additional offices in the San Francisco Bay Area are also within NDCA.  Exs. 3, 4; Ex. 44 at 4.  In Google I and II, but equally relevant here, Google identified **Todd Hansen** as the lead of the FCM team, and he is likely to be a relevant witness here.  Mr. Hansen lives in Los Gatos,

California (in NDCA), works out of one of Google's San Francisco Bay Area offices (in NDCA), and "has worked on Google's messaging service since the days it was called GTalkService" in 2007.  Ex. 44 at 4; Ex. 5 at 706:16–17, 708:2–4, 709:1–3.  His work "specializes in building scalable, maintainable, and performant core services for FCM," and he leads a team of engineers based in NDCA.  Ex. 44 at 4.  Google further identifies several of Mr. Hansen's direct reports as possessing "relevant experience and/or institutional knowledge regarding FCM, including **Sampson Chen** and **Fred Quintana**," who also work out of Google's San Francisco Bay Area offices.  *Id*. at 4–5 (emphasis added).  Other Google employees who worked on FCM and FCM's predecessor products (GTalkService, C2DM, GCM) are also in NDCA, including **Debajit Ghosh** and **Ali Satter**.  *Id*.; *see also* Ex. 5 at 719:6–8.  These NDCA-based employees possess not just institutional knowledge, but also relevant documents.  Ex. 44 at 5–6.

### E.    Many Additional Third-Party Witnesses Are in NDCA

#### 1.    Former Headwater Employees, ItsOn Employees and Patent Prosecutors Who May Be Called As Witnesses

Headwater's NDCA presence extends to its past and present personnel.  Numerous former Headwater and ItsOn employees and the attorneys who prosecuted Headwater's patents, all of whom may be called as witnesses in this case, appear to still reside in NDCA:

> **Krista Jacobsen**, Headwater's former "Head Counsel" from 2011 to 2014, is located in NDCA.  Ex. 12 at 6:17–21, 24:12–14, 30:16–17, 59:14–60:1.  Both during her time at Headwater and after, Ms. Jacobsen drafted and prosecuted patent applications for Headwater.  *Id.* at 22:8–13, 25:22–26:4, 32:2–6.  Indeed, Ms. Jacobsen prosecuted U.S. Pat. No. 8,839,388, which issued from an application to which all Asserted Patents claim priority.  Ex. 13 at (74).  On information and belief, Ms. Jacobsen possesses evidence to support at least Walmart's inequitable conduct, marking, inventorship, and/or standing defenses.

> **Charles Giancarlo**, ItsOn's co-founder, is located in NDCA in Mountain View, California according to his LinkedIn profile.  Ex. 14.  Dr. Raleigh stated that Mr. Giancarlo worked with him on his inventions.  Ex. 15 at 25:17–22.

> **Cory Modlin**, former Technical Advisor at Headwater, is located in NDCA in Redwood

City, California according to his LinkedIn profile. Ex. 16. Mr. Modlin likely possesses evidence to support Walmart's defenses, including at least inequitable conduct. Ex. 17 at 3–5; Ex. 18 at 5.

**Roger Sippl**, a former Headwater Board Member and current Managing Partner at Sippl Investments, LLC, is located in NDCA in Redwood City, California according to his LinkedIn profile. Ex. 19. Mr. Sippl may have information relevant to Headwater's formation, its relationship with ItsOn, and/or damages.

**James Fitzgerald**, ItsOn's lead software engineer of Android Client Technology, is located in NDCA in San Francisco according to his LinkedIn profile. Ex. 20. Deposition testimony of Mr. Fitzgerald was played at the trial in another Headwater case. Ex. 21 at 1054:23–1056:14. Mr. Fitzgerald testified that most of the software engineering he did during his time at ItsOn had to do with Android. *Id.* Mr. Fitzgerald may be relevant to Walmart's marking defense. Ex. 22 at 6.

**James Lavine**, a former ItsOn employee and current Headwater contractor who is a named inventor on dozens of Headwater patents, appears to be located in NDCA. According to his LinkedIn profile, Mr. Lavine is working remotely in the "San Francisco Bay Area." Ex. 23. Deposition testimony of Mr. Lavine was played at trial in other Headwater cases and could be relevant here too. *See, e.g.*, Ex. 24 at 526:15–534:19.

**Alireza Raissinia**, a former Headwater and ItsOn employee and named inventor on related Headwater patents, is located in NDCA in Los Gatos, California according to his LinkedIn profile, Mr. Raissinia lives in Los Gatos, California. Ex. 25. Deposition testimony of Mr. Raissinia was played at trial in other Headwater cases and could be relevant here too. *See, e.g.*, Ex. 24 at 287:13–292:9.

**Michael Schallop**, a lawyer who prosecuted a patent application to which the Asserted Patents claim priority, is located in Los Altos, California, within NDCA. *See* Exs. 26 and 27.

### 2.    Other Third Parties Who May Be Called As Witnesses

**ItsOn-ABC and Sherwood Partners**. According to Headwater, ItsOn "licensed Headwater's intellectual property and implemented Headwater's technology." Dkt. 19 ¶ 14; Ex. 6 at 25:18–23. After ItsOn entered bankruptcy, its assets were transferred to an assignee under an Assignment for the Benefit of Creditors ("ItsOn-ABC"), which is administered by Sherwood Partners. Ex. 28 at 1–2. Headwater has confirmed that these assets remain in the possession of ItsOn-ABC. *Id.* Both ItsOn-ABC and Sherwood Partners operate out of Mountain View, California. Exs. 29, 30. Consequently, ItsOn's ESI relevant to Walmart's defenses—including

6

source code and other technical materials—is located in NDCA.

**InterDigital**.  InterDigital has an office in NDCA and may possess information bearing on damages, particularly because it explored acquiring Headwater's patent portfolio.  Exs. 31, 32 at 1.  Headwater and InterDigital apparently signed a letter of intent under which Headwater "was willing to sell its entire company, including its patents, for $60 million."  Ex. 7 at 30.

**Qualcomm**.   Qualcomm, headquartered in San Diego (Ex. 33), is likely to possess information bearing on Walmart's defense concerning Headwater's lack of standing to sue.  Dr. Raleigh has acknowledged that he developed the invention that launched the Asserted Patents while employed at Qualcomm, and Qualcomm has asserted ownership rights.  Ex. 34 at 1, 3.  Dr. Raleigh further reiterated in a publicly available video that the conception of Headwater's inventions occurred during his time at Qualcomm.  *See* https://vimeo.com/539945302.

## III.    LEGAL STANDARD

Transfer of venue is governed by 28 U.S.C. § 1404(a), which authorizes a district court to transfer "[f]or the convenience of parties and witnesses" any civil action to "any other district or division where it might have been brought."  The threshold question is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").  If that threshold is satisfied, courts turn to a set of private and public interest factors.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will

7

govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II").  These factors are neither exhaustive nor exclusive, and no single factor is dispositive.  *Id*.  A movant establishes the requisite "good cause" for transfer by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice."  *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).  Specifically, the movant must show: "(1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue."  *Id*.

## IV.    ARGUMENT

### A.    This Suit Could Have Been Filed in NDCA

There can be no legitimate question that this case could have been filed in NDCA.  This is because Walmart: (i) extensively operates within California by selling, shipping, advertising, and generating substantial revenue in California, including operating thirty-seven store locations in NDCA; (ii) maintains offices in Sunnyvale, California (in NDCA); and (iii) sends push messages through Walmart apps using FCM to customers in NDCA.  James Decl. ¶¶ 3, 7.

### B.    The Private Interest Factors

Three private interest factors favor transfer.  One is neutral.

#### 1.    The Relative Ease of Access to Sources of Proof Favors Transfer

In considering the relative ease of access to sources of proof, courts look to determine where evidence, such as documents and physical evidence, is stored.  *See Volkswagen II,* 545 F.3d at 316.  "The movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer."  *In re Apple,* 979 F.3d 1332, 1340 (Fed. Cir. 2020).  "[T]he fact that some evidence is stored in places other than

either the transferor or the transferee forum does not weigh against transfer." *In re Juniper Networks, Inc.,* 14 F.4th 1313, 1321 (Fed. Cir. 2021).

The infringement allegations here are not anchored in technology that Walmart designed or developed, but instead that Google designed and developed. *See* Section II.D, *supra*. Thus, the main sources of proof here will likely be Google documents. Google has confirmed that "[d]ocuments about Google's FCM products and services are primarily created and maintained by the employees who designed, developed, and worked on those products and services in Google's San Francisco Bay Area offices." Ex. 44 at 12. This favors transfer.

As for Walmart's own evidence, its NDCA-based witnesses who work on the accused products create documents in NDCA (James Decl. ¶¶ 7, 8), which favors transfer. Walmart's India-based witnesses who work on the accused products create documents in India. *Id.* ¶ 9. Some of Walmart's relevant documents are also stored on servers located in Virginia and Oregon. *Id.* ¶ 10. However, the presence of relevant documents outside the transferee forum does not weigh against transfer to NDCA. *Juniper*, 14 F.4th at 1321.

Regarding third parties, as discussed above, at least *17* known third parties may be called as witnesses. *See supra* Sections II.D, II.E. Each is in California, and all except one is in NDCA. *Id.* It is expected that these witnesses create documents in the locations where they live and/or work, which favors transfer. There is no reason to believe their evidence is in EDTX. And if their evidence was located outside of NDCA or EDTX, that would still be neutral as to this factor. *Juniper*, 14 F.4th at 1321.

As for Headwater, the company is run entirely by Dr. Raleigh out of Nevada. *See* Ex. 35 at 231:21–232:4; Ex. 36 at 843:1–844:7. Even if its evidence were in its (seemingly unmanned) EDTX office in Tyler, this factor would still favor transfer because the bulk of the evidence is

expected to come from Google, Walmart, and the many other third parties in NDCA.

On balance, this factor favors transfer.

### 2.    The Availability of Compulsory Process Favors Transfer

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). A subpoenaed witness may be required to attend trial, a hearing, or a deposition within 100 miles of where the witness lives or works, or anywhere within the same state if the witness would not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(A). Absent affirmative indication that witnesses are willing to appear voluntarily, a court must presume compulsory process will be needed. *See In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021); *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)).

Of the 17 third-party witnesses identified herein, only one (Qualcomm) is not within 100 miles of the NDCA courthouse: (1) Todd Hansen; (2) Sampson Chen; (3) Fred Quintana; (4) Debajit Ghosh; (5) Ali Satter; (6) Krista Jacobsen; (7) Charles Giancarlo; (8) Cory Modlin; (9) Roger Sippl; (10) James Fitzgerald; (11) James Lavine; (12) Alireza Raissinia; (13) Michael Schallop; (14) ItsOn-ABC; (15) Sherwood Partners; (16) InterDigital; and (17) Qualcomm. *See supra* Sections II.D, II.E. By contrast, not a single known relevant third-party witness resides within EDTX or 100 miles from the Marshall courthouse.

There is no evidence that any of the known possible witnesses would be willing, so for purposes of this factor they must be considered unwilling. Indeed, the record provides direct evidence of unwillingness for at least one witness. Ms. Jacobsen previously moved to quash a subpoena rather than testify in a prior Headwater case in EDTX. Ex. 38 and *Jacobsen v. Samsung Elecs. Co.*, No. 2:25-mc-0004-JRG-RSP, Dkt. 18 (E.D. Tex. June 18, 2025).

10

This factor supports transfer.  *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014).

### 3.    The Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation omitted). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II,* 545 F.3d at 317 (citation omitted).  "[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home[.]"  *Id.* (citation omitted). Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id.*

NDCA is far more convenient and less expensive for Walmart's likely willing witnesses, and EDTX is not more convenient for any of them.  **Mary Michele James, Niketu Dave, Dhaval Gogri, and Ashish Korpe** are Walmart employees who work on the accused products and are likely to be witnesses here.  James Decl. ¶¶ 6–8.  They are all based in NDCA.  *Id*. ¶¶ 7, 8; *see also* Ex. 47.  If this case remains in EDTX, these witnesses would be forced to drive 30 to 60 minutes from their workplace or home in NDCA to San Francisco International Airport, and then fly for approximately: (i) 3.5 hours to Dallas Fort Worth International Airport followed by a 2.5-hour drive to Marshall, or (ii) 6.25 hours to Shreveport Regional Airport (connecting through Dallas Fort Worth International Airport) followed by a 40-minute drive to Marshall.  Exs. 8, 48, 50; James Decl. ¶ 12.  They would also incur the cost of a hotel stay in or near Marshall.  Yet, if this case is transferred to NDCA, each of them could drive from their workplace or home to NDCA's San Francisco courthouse in no more than one hour, without incurring the cost of hotel accommodations.  James Decl. ¶¶ 7, 8; Ex. 47.  Transferring this case to NDCA would also drastically reduce the "personal costs associated with being away from work, family, and

community" that these witnesses would have to bear. *Volkswagen II*, 545 F.3d at 317.

It may be that Walmart will also call upon employees who work in or around Bengaluru, India. James Decl. ¶ 9. Travel to NDCA will be easier for these individuals because it can be completed in less than 24 hours, whereas travel to Marshall cannot. Flights from Bengaluru to San Francisco, California take 22 hours including layover time, and it takes approximately 15 minutes to drive from the airport to the courthouse. Exs. 39, 47. In contrast, flights from Bengaluru to Dallas, Texas take no less than 23 hours including layover time, followed by a 2.5-hour drive to Marshall, for a total of at least 25.5 hours. Exs. 39, 48. Flights from Bengaluru to Shreveport, Louisiana take over 26 hours including layover time, followed by a 40-minute drive to Marshall, for a total of approximately 27 hours. Exs. 39, 48. The few hours difference in the time it takes to get to NDCA versus EDTX is significant given the overall length of the travel.

Litigating this case in NDCA appears more convenient for Headwater's only known likely witness as well. Dr. Raleigh, who runs the company himself (*see supra* Sections II.B and IV.B.1), resides in Incline Village, Nevada. Travel from Incline Village to Marshall, Texas involves a 45-minute drive to Reno-Tahoe International Airport, and a flight of approximately: (i) 3.25 hours to Dallas Fort Worth International Airport followed by a 2.5-hour drive to Marshall, or (ii) 6.5 hours to Shreveport Regional Airport (connecting through Dallas Fort Worth International Airport) followed by a 40-minute drive to Marshall. Exs. 40, 48, 49. In contrast, getting to San Francisco involves a 45-minute drive to Reno-Tahoe International Airport, an 80-minute flight to San Francisco International Airport, and a 15-minute drive from the airport to the courthouse. Exs. 40, 47, 49.

### 4. The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Are Neutral

This factor weighs all practical considerations that bear on the ease, efficiency, and

12

economy of trial. *Volkswagen II*, 545 F.3d at 315. First, because Headwater's case against Google has already been transferred to NDCA, transferring this case there too would create an expeditious way for the judiciary to handle Headwater's substantially-identical allegations against two parties, with Google II and the Target case (Dkt. 81) possibly to follow. Second, while this Court has overseen some Headwater proceedings, the NDCA court is very familiar with Headwater, its patents, and its ongoing disputes with Google too.[2] This factor is neutral.

### C.    The Public Interest Factors

One public interest factor favors transfer. Three are neutral.

#### 1.    The Local Interest in Having Localized Interests Decided at Home Favors Transfer

The local interest factor examines the "significant connections between a particular venue and the events that gave rise to a suit." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *see also Volkswagen II*, 545 F.3d at 318.

NDCA's local interest in this case is substantial. First, the claimed invention was allegedly conceived in NDCA while Dr. Raleigh worked in the San Francisco Bay area. Ex. 6 at 11:21–25, 13:6–15, 15:2–8. Dr. Raleigh has said he arrived at the alleged invention through a collaboration between ItsOn (then based in NDCA) and Best Buy. *Id.* at 16:13–19:2, 25:18–23. Eight provisional and nonprovisional applications to which the Asserted Patents claim priority, as well as the Asserted Patents themselves, name Dr. Raleigh as an inventor residing in Woodside, California. The applications were filed and prosecuted in NDCA. Dkts. 19-1, 19-2, 19-3; *see also* Ex. 6 at 13:6–15, 14:8–15:8. The fact that "[t]he patented technology was invented in, and the

---

[2] *Headwater Rsch. LLC v. Motorola Mobility LLC*, No. 23-cv-4496 (N.D. Cal.) (settled); *Google LLC v. Headwater Rsch. LLC*, No. 25-cv-7463 (N.D. Cal.) (pending); *Google LLC v. Headwater Rsch. LLC*, No. 25-cv-9558 (N.D. Cal.) (pending); *Apple Inc. v. Headwater Rsch. LLC*, No. 25-cv-7592 (N.D. Cal.) (settled).

patents [were] prosecuted from," NDCA establishes, without more, that this factor favors transfer. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).

Second, FCM was engineered by Google's NDCA-based teams.  *See In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023).  The engineers who built and continue to work on the technology are based in NDCA—among them Mr. Hansen, whom Headwater names in its complaint against Google (Ex. 41 ¶ 2), and Mr. Ghosh, whose presentation on FCM was featured at trial in this Court in a previous Headwater case involving the Asserted Patents.  Ex. 42 at 354:2–16, 452:21–453:6; Ex. 5 at 784:1–785:2; Ex. 21 at 1081:14–23; Ex. 43.  *See In re Google LLC*, 2021 WL 4427899, at *6 (Fed. Cir. 2021).  Messrs. Hansen and Ghosh also both worked on the prior art product GTalkService, and possess direct knowledge about its development.  *See supra* Section II.D; *Cortex MCP, Inc. v. Visa, Inc.*, 2023 WL 11990868, at *8 (W.D. Tex. Nov. 3, 2023); *see Valtrus Innovations Ltd. v. Google LLC*, 2025 WL 2076627, at *9 (N.D. Tex. July 22, 2025).

By contrast, EDTX has no real local interest.  Headwater's presence here is nominal (with an office but apparently no employees in the District), and the claimed technology was developed elsewhere.  Walmart does not have employees responsible for the accused technology in this District.  James Decl. ¶ 11.  Walmart is also unaware of any Google employees responsible for the accused technology in this District.  *See generally* Ex. 44.

### 2.    The Remaining Factors Are Neutral

The other public interest factors: (a) administrative difficulties flowing from court congestion, (b) the courts' familiarity with the law, and (c) avoidance of conflicts from application of foreign laws, are neutral.  As to court congestion, the average times to trial for EDTX and NDCA are roughly the same (approximately 27 months and 30 months, respectively).  Exs. 45, 46.  In any event, the Federal Circuit has described this factor as "the most speculative" and that "when other relevant factors weigh in favor of transfer or are neutral"—as is the case here—"then

the speed of the transferee district court should not alone outweigh all those other factors." *Juniper*, 14 F.4th at 1322.  Finally, both courts are familiar and experienced with patent litigation issues, and there are no issues regarding conflict of laws or application of foreign law.

## V.    CONCLUSION

Four factors favor transfer.  Four are neutral.  None weighs against transfer.  Accordingly, Walmart respectfully requests transfer of this case to the San Francisco Division of NDCA.

Dated: April 23, 2026

*/s/ Michael J. Zinna*

Michael J. Zinna (Admitted in E.D. Tex.)
Abhishek Bapna (Admitted in E.D. Tex.)
Vincent M. Ferraro (Admitted in E.D. Tex.)
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: mzinna@kelleydrye.com
Email: abapna@kelleydrye.com
Email: vferraro@kelleydrye.com

Eric H. Findlay
Brian Craft
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

*Attorneys for Defendant Walmart Inc.*

16

## CERTIFICATION OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on the date below all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system on April 23, 2026.

Dated: April 23, 2026                    By: */s/ Michael J. Zinna*
                                             Michael J. Zinna

## CERTIFICATE OF CONFERENCE

Abhishek Bapna, counsel for Defendant, met and conferred with Jason Wietholter, counsel for Plaintiff, telephonically on April 3, 2026, in compliance with Local Rule CV-7(h). Plaintiff opposes this motion. Plaintiff does not believe that this case should be transferred to the Northern District of California. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

Dated: April 23, 2026                    By: */s/ Abhishek Bapna*
                                             Abhishek Bapna